# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

SANDRO RODRIGUEZ
     **Plaintiff,**

    **v.**                                         **Case No. 17-C-1278**

**WARDEN MICHAEL MEISNER,** *et al.,*
     **Defendants.**

---

## ORDER

Plaintiff Sandro Rodriguez, a Wisconsin state prisoner who is representing himself, filed a complaint under 42 U.S.C. § 1983 alleging that defendants violated his civil rights. This matter comes before me on plaintiff's motion for leave to proceed without prepayment of the filing fee and for screening of the complaint. Docket Nos. 1-2.

The Prison Litigation Reform Act ("PLRA") applies to this action because plaintiff was incarcerated when he filed this complaint. *See* 28 U.S.C. §1915. The law allows an incarcerated plaintiff to proceed with a lawsuit without prepaying the civil case filing fee, as long as he meets certain conditions. One of those conditions is payment of an initial partial filing fee. *See* 28 U.S.C. §1915(b). Once plaintiff pays the initial partial filing fee, I can allow plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On September 26, 2017, Magistrate Judge David E. Jones ordered plaintiff to pay an initial partial filing fee of $ 3.23. Docket. No. 5. Plaintiff paid the fee on October 11, 2017. Therefore, I will grant plaintiff's motion for leave to proceed without prepayment of the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

The PLRA requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss an action or portion thereof if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). I must give a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**FACTS**

Plaintiff is an inmate at Redgranite Correctional Institution ("RGCI"). Docket No. 1. Defendants are: Warden Michael Meisner, Correctional Officer Bembo, Doctor Jhon Silkey, Nurse Moerchen, Lieutenant Jaeger, and Nurse Bater. *Id*.

On September 6, 2015, plaintiff was weight lifting on an incline bench at RGCI when one of the pins designed to hold the weights came loose. *Id*. at 2-3. Plaintiff fell forward and struck his face on the stack of weights. *Id*. at 3. Plaintiff was dizzy and confused and had blood all over his face. *Id*. Other inmates who were in exercise area came over to help plaintiff. *Id*. Someone told Correctional Officer Bembo what happened

and Bembo did not help or see how serious plaintiff's injury was. *Id.* No nurse ever arrived to help plaintiff in the exercise area. *Id.* at 4.

A little while later, a different correctional officer came by to see what happened. *Id.* This officer took plaintiff to the Health Services Unit ("HSU"), but he did so by foot instead of by wheelchair. *Id.* Plaintiff's walk to HSU was difficult—he was dizzy, confused, bleeding, and unable to properly follow directions. *Id.* Once plaintiff arrived at HSU, there was no nurse available. *Id.* Captain Wesner (not a defendant) instructed prison staff to take plaintiff to Berlin Memorial Hospital. *Id.*

The drive to Berlin Memorial was 40 to 45 minutes long. *Id.* at 5. Plaintiff was dizzy, confused, bleeding, and unable to follow directions the entire time. *Id.* Despite this, prison staff required plaintiff to exchange his clothing due to prison policy, which added a 10- to 15-minute delay. *Id.* At this point, plaintiff still had not seen a nurse. *Id.*

Once plaintiff arrived at Berlin Memorial Hospital, Doctor Silkey and a nurse "received" plaintiff. *Id.* Silkey examined plaintiff and concluded that plaintiff had a deep laceration in his forehead and right eyelid. *Id.* Silkey gave plaintiff a total of 11 stitches but he did so without proper cleaning. *Id.* Plaintiff asked Silkey why the wound was not properly cleaned but Silkey ignored the question. *Id.* Plaintiff also did not get any pain medication while at the hospital. *Id.* at 6. Plaintiff then went back to RGCI. *Id.*

The next day, on September 7, 2015, plaintiff went to HSU to see Nurse Moerchen. *Id.* Plaintiff explained that he had pain in his neck, head, and lower back; trouble walking; and blurry vision. *Id.* Moerchen sent plaintiff back to his housing unit without addressing his concerns. *Id.* Moerchen did not provide plaintiff with pain medication. *Id.* at 7.

Several days after that, on September 9, 2015, Lieutenant Jaeger called plaintiff to the officer's station to discuss what happened in the weight room. *Id.* Jaeger told plaintiff that he would be disciplined for misuse of the weight machine. *Id.* Plaintiff explained that the pin used to hold the weights in place slipped out—he did not misuse the weights. *Id.* Jaeger gave him the conduct report anyway. *Id.* Plaintiff asked if he could refuse to sign the conduct report and Jaeger explained that if plaintiff did that, he had the right to take "more drastic measures." *Id.* at 8. Plaintiff signed the conduct report even though he felt intimidated by Jaeger's behavior. *Id.* Plaintiff notes that the institution subsequently switched out the incline bench and has now posted signs on how to properly use the weight room equipment. *Id.* at 8.

On September 19, 2015, plaintiff went to HSU to see Nurse Bater. *Id.* Plaintiff again explained that he was in pain and Bater also sent plaintiff back to his housing unit without pain medication. *Id.* at 9. Plaintiff contacted HSU several more times about pain but was ignored. *Id.* Plaintiff seeks monetary damages and declaratory relief. *Id.* at 10.

## DISCUSSION

To state a claim for relief under 42 U.S.C. § 1983, plaintiff must allege that defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

Liability under § 1983 is based on an individual's personal involvement in the constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). "An official satisfies the personal responsibility requirement of section 1983 . . . if the

conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Id.* (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). He "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

I will dismiss Michael Meisner from the action for lack of personal involvement. Plaintiff alleges no facts about what Meisner did or did not do to violate his constitutional rights. Plaintiff mentions him nowhere in the complaint other than in the caption.

The Eighth Amendment prohibits prison officials from showing "deliberate indifference" to a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 829, 834 (1994). Jail officials act with deliberate indifference when they know of a substantial risk of serious harm and either act or fail to act in disregard of that risk. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Inmates have a "serious harm" if the inmate's condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Id.*

I will allow plaintiff to proceed against Bembo, Silkey, Moerchen, and Bater. Plaintiff states that Bembo refused to provide him with medical care following his injury in the weight room. Similarly, Silkey did not properly care for his injuries at the Berlin Memorial Hospital; and Silkey, Moerchen, and Bater refused to provide pain medication for his injuries. As a result, plaintiff experienced unnecessary pain. These allegations are sufficient to state Eighth Amendment deliberate indifference claims against Bembo, Silkey, Moerchen, and Bater.

I will dismiss Jaeger from the action. Plaintiff's only allegation against Jaeger is that he improperly gave plaintiff a conduct report. Plaintiff can challenge the merits of his conduct report through the Inmate Complaint Review System ("ICRS"). If he is unsatisfied with the result, plaintiff can file an appeal in state court through a *writ of certiorari*. Plaintiff's factual allegations against Jaeger do not implicate his federal rights. Therefore, he may not proceed against Jaeger.

**CONCLUSION**

**THEREFORE, IT IS ORDERED** that plaintiff's motion to proceed without prepayment of the filing fee (Docket No. 2) is **GRANTED**. The agency having custody of the prisoner shall collect from plaintiff's prison trust account the **$346.77** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where the plaintiff is confined.

**IT IS FURTHER ORDERED** that Michael Meisner and Lt. Jaeger are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, the Clerk's office shall electronically send copies of the complaint and this order to the Wisconsin Department of Justice for service on CO Bembo, Nurse Moerchen, and Nurse Bater.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, CO Bembo, Nurse Moerchen, and Nurse Bater shall file a responsive pleading to the complaint within 60 days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order on Dr. Jhon Silkey, pursuant to Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshal Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the court to order service by the U.S. Marshal Service, it has not made any provision for either the court or the U.S. Marshal Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. § 0.114(a)(2), (a)(3). The U.S. Marshal Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

**IT IS FURTHER ORDERED** that Dr. Jhon Silkey shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the parties shall not begin discovery until the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that the plaintiff shall mail all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 4th day of April, 2018.


**s/ Lynn Adelman**
LYNN ADELMAN
District Judge